VICTORIA L. FRANCIS
Assistant U.S. Attorney
U.S. Attorney's Office
P.O. Box 1478
Billings, MT 59103
2929 Third Ave. North, Suite 400
Billings, MT 59101
Phone: (406) 247-4633
Fax: (406) 657-6989
E-mail: victoria.francis@usdoj.gov

ATTORNEY FOR DEFENDANT
United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| UNITED STATES,<br><br>        Plaintiff,<br><br>vs.<br><br>2003 Lincoln Navigator and Rainbow Motel,<br><br>        Defendants. | CV 12-45-BLG-RFC-CSO<br><br><u>FIRST AMENDED VERIFIED COMPLAINT *IN REM*</u> |

Plaintiff, United States of America, by its attorney, Victoria L. Francis, Assistant U.S. Attorney for the District of Montana, files this amended complaint and alleges as follows:

1. This is an action to forfeit and condemn to the use and benefit of the United States of America for violations of 21 U.S.C. §§ 841 *et seq.*, 881(a)(4), and 881(a)(7) the following personal and real property: 2003 Lincoln Navigator, VIN# 5LMFU28R33LJ46854 registered in the name of Rainbow Corporation; and the one-fifth (1/5) interest in real property, commonly known as the Rainbow Motel, owned by Daniel Morrow, which interest is held by Daniel Morrow as a tenant in common. The real property, commonly known as the Rainbow Motel, is located in Yellowstone County, Montana, and is more particularly described as follows:

> Lots 9, 10, 11, 12 and 13, of Block 24, of Yellowstone Addition, to the City of Billings, Yellowstone County, Montana, according to the official plat thereof on file and of record in the office of the Clerk and Recorder of said County, under Document No. 4067.

## JURISDICTION AND VENUE

2. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant property under 21 U.S.C. § 881. This Court has jurisdiction over the action under 28 U.S.C. §§ 1345 and 1355.

3. Venue is proper in this district pursuant to 28 U.S.C. §§ 1355(b)(1)(B) and 1395(b) or (c), because this is a civil proceeding for the forfeiture of property that was found in this district.

## THE DEFENDANTS *IN REM*

4. The defendants consist of the personal and real property described in paragraph 1.

## FACTS

5. On or about October 2011, a Confidential Source (CS) provided the Big Sky Safe Streets Task Force information that a Cassandra Seal contacted him to purchase methamphetamine. The Confidential Source had previously supplied Seal and others with methamphetamine in the Billings area.

6. Big Sky Safe Streets Task Force Officers, including Task Force Officer Michael Robinson, set up a controlled reverse drug transaction for October 14, 2011 at a hotel in Laurel. The operation utilized an undercover officer. The Confidential Source called Seal to let her know he was in Laurel. Seal indicated she was dropping kids off at the sitter and had some "running around" to do. She indicated she would arrive with a third person.

7. Around 6:45 p.m. Task Force Officers observed a Lincoln Navigator, known to be utilized by Danny Morrow, Montana license plate 3-26794A, on SW 4th Street in Laurel. They also observed a white Chevy truck behind the Navigator. Both vehicles parked in the parking lot of the hotel. Three individuals entered the hotel. Seal placed a phone call to the Confidential Source to let him know they were almost there. The Confidential Source then gave Seal the room number.

8. At approximately 6:51 p.m. the three individuals arrived at the hotel room. Task Force Officer Robinson was able to positively identify Danny Morrow and Seal as two of the individuals. The third individual was later identified as Ali Khan.

9. After discussion in the hotel room, the undercover officer pulled out a large ziploc bag of methamphetamine and showed it to Seal, Morrow and Khan. Danny Morrow asked about the quality and asked if he could take a piece out and crush it so he could snort it. The Confidential Source handed the bag to Morrow and Morrow inspected the methamphetamine.

10. While the methamphetamine was being inspected by Morrow, the undercover officer asked about the cash, and Seal took cash out of

her pocket saying she had $7,000 in cash. Morrow and Seal then discussed going to the grocery store to purchase bags to separate the methamphetamine. Morrow then opened the bag and poured the methamphetamine onto a large plastic dish that was in the room. Khan also looked at the meth and spoke about the quality. At this time the Undercover Officer left the room and signaled the tactical team to enter the room.

11. The Confidential Source left the hotel room and Morrow, Seal and Khan were taken into custody. Khan when patted down was found to have two loaded handguns, one in his coat pocket and the other in a shoulder holster. Seal was interviewed and after executing a consent several rolls of cash were found on her person secured with rubber bands.

12. Danny Morrow was taken outside to the Lincoln Navigator. Morrow consented to a search of the vehicle. Morrow told agents that the Navigator is registered to Rainbow Corporation but said he was the person who drove it. A check of records with the Montana Secretary of State shows that Daniel Morrow is the President of Rainbow Corporation. He is also the registered agent of Rainbow Corporation

and his address is that of the Rainbow Motel. Morrow told agents that he and Cassandra Seal had driven together in the Navigator and that Ali Khan came in the white pickup.

13. Morrow was interviewed by FBI Special Agent Kuretich and Task Force Officer Schillinger. Morrow stated that he moved into the Rainbow Motel and began managing the property approximately 7 years ago. Morrow stated he smoked and snorted methamphetamine twice a day, using about .25 grams of meth a day. When asked about the methamphetamine deal with Cassandra Seal, Morrow stated she called him about a week ago and asked him if he wanted to invest some money in a shipment of methamphetamine. Morrow told Seal he would be willing to contribute money.

14. Morrow told Task Force Officers that he had contacted Seal earlier in the day on October 14, 2011 and asked her if the deal was still on. Seal indicated that it was on and that someone was on the way. Seal then went to the Rainbow Motel to meet with Morrow. Seal told Morrow the deal was going to take place in Laurel, Montana. They were both going to meet a guy that Seal and Morrow had met about a year ago. Morrow stated he contributed $3,000.00 in cash to the deal

and had given that money to Seal. The money had come out of the profits for the Rainbow Motel. Morrow drove with Seal to the hotel in Laurel, Montana in his green Lincoln Navigator.

15. Morrow told officers that he had received methamphetamine from Donny Seal on four occasions. Donny Seal had fronted methamphetamine to him and that Morrow had traveled to Yakima, Washington to meet Seal and drove the Lincoln Navigator. He and two others drove to pick up methamphetamine and then stayed the night before returning to Billings.

16. Daniel Morrow, the president and resident manager of the Rainbow Motel, utilized the Rainbow Motel to facilitate the storage and sale of methamphetamine.

17. FBI Special Agent Jordan Kuretich learned through his investigation about substantial use of the Rainbow Motel for the sale of methamphetamine with the knowledge and consent of Danny Morrow as follows:

a. A report by a confidential informant (CI) that the CI had seen Morrow in May 2011, utilizing his manager residence at the Rainbow Motel to sell at least 2 ounces of methamphetamine in his living area.

b. In June 2011 a maid who worked at the Rainbow Motel sold controlled substances for Morrow, and stole money from him; the money stolen from Morrow was derived from the sale of controlled substances on the premises of the Rainbow Motel.

c. An additional CI told law enforcement he/she and another person were living at the Rainbow Motel and selling methamphetamine for Danny Morrow.

d. The Drug Task Force in Billings, Montana, made a controlled purchase from Danny Morrow at the Rainbow Motel.

e. In late June and July 2011, a Crimestopper's report stated that Danny Morrow and another individual were selling drugs.

f. Another CI reported that he/she purchased 1 gram of methamphetamine from Morrow, and that two other quantities of approximately the same amount were also available for sale by Morrow on the Rainbow Motel premises.

g. Yet another CI reported to the Drug Task Force that drugs were being sold out of a room at the Rainbow Motel, and the drugs were coming from Danny Morrow.

h. Danny Morrow was arrested on December 23, 2011, and a day or two after his arrest a person working in housekeeping at the Rainbow Motel was shot at the motel; that person sold methamphetamine for Morrow out of the motel.

18. That the remaining shareholders and property owners of the Rainbow Motel Corporation, are siblings of Daniel Morrow and heirs to their father's estate, all of whom received on December 14, 2010, a Personal Representative's Deed to the real property as tenants in common, with Daniel Morrow being deeded a portion and four additional siblings receiving equal portions as tenants in common.

19. The totality of the circumstances demonstrates that the 2003 Lincoln Navigator was used, or intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, and possession of methamphetamine, a controlled substance in violation of 21 U.S.C. § 841, *et seq*. The circumstances include, but are not limited to, the use of the Lincoln Navigator to drive to Laurel with the intent to purchase methamphetamine on October 14, 2011 wherein Morrow contributed $3,000 in currency for the purchase, and Morrow's use of the Navigator

previously to drive to Yakima, Washington, to purchase methamphetamine.

20. The totality of the circumstances demonstrates a substantial connection that the real property described in paragraph 1 above was used or intended to be used to facilitate one or more violations of 21 U.S.C. § 841, *et seq.*

## CLAIM FOR RELIEF

21. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 19 above.

22. The defendant personal property constitutes a vehicle which was used, or intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of a controlled substance, methamphetamine, in violation of 21 U.S.C § 841, *et seq.*

23. The defendant real property was used, or intended to be used, to facilitate one or more violations of 21 U.S.C. § 841, *et seq.*

24. As a result of the foregoing, the defendant personal property is liable to condemnation and forfeiture to the United States for its use, in accordance with 21 U.S.C. § 881(a)(4), and the defendant real

property is liable to condemnation and forfeiture to the United States for its use, in accordance with 21 U.S.C. § 881(a)(7).

**DATED** this 28th day of September, 2012.

MICHAEL W. COTTER
United States Attorney

_/s/ Victoria L. Francis_

VICTORIA L. FRANCIS
**Assistant U.S. Attorney**
**Attorney for Plaintiff, United States**

## VERIFICATION

I, Jordan Kuretich, a Special Agent with the Federal Bureau of Investigation and Coordinator of the Big Sky Safe Streets Task Force, hereby verify and declare under penalty of perjury that I have read the foregoing First Amended Verified Complaint *in Rem* (Verified Complaint). The matters contained in the First Amended Verified Complaint are to my knowledge true and correct, except that those matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the Big Sky Safe Streets Task Force and the Federal Bureau of Investigation, information obtained from surveillance of a set up undercover sale, interviews of witnesses by myself and other Task Force Officers including FBI Special Agents, and business records with the Montana Secretary of State.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated this 28th day of September, 2012.

*[signature]*
Jordan Kuretich
Special Agent
Federal Bureau of Investigation